UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL PEOPLES,

          Petitioner,

   -against-                              **MEMORANDUM & ORDER**
                                                15-CV-7274 (PKC)

D. MARTUSCELLO, SUPERINTENDENT,
RIVERVIEW CORRECTIONAL FACILITY,

          Respondent.
----------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Petitioner Michael Peoples, appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 ("Section 2254"), challenging his conviction and sentence entered on February 14, 2013 in the Supreme Court of the State of New York, Queens County. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

**I.    Facts**[1]

On April 16, 2012, Karen Eisenstadt, a 69-year-old retired blind woman, went to a Rite Aid store on 75th Avenue in Queens to buy milk and eggs. (8/27/12 Tr. 255-56, Eisenstadt.) She walked to Rite Aid from her apartment, which was approximately two blocks away, with her guide dog Midnight. (*Id.* at 256-57.) She paid for the milk and eggs with a Discover credit card that she kept in a cigarette case, along with her Chase credit card, ATM card, identification card, Metrocard, and signature guide, a device that allows blind people to create a straight line for their signature. (*Id.* at 257, 262-265.) After Eisenstadt left Rite Aid, she put her cigarette case in her

---

[1] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

skirt pocket and returned to the 75th Avenue subway station, walking through a tunnel to pass under Queens Boulevard. (*Id.* at 257-258).

Petitioner, along with Latisha Richardson and a man named "Kenny," were walking around Queens Boulevard, looking for opportunities to pick-pocket people, when they saw Eisenstadt enter the subway. (8/27/12 Tr. 324-327, 329-330, Richardson.) Petitioner followed Eisenstadt down the subway stairs. (*Id.* at 330.) Eisenstadt testified that while she was walking down the stairs, she felt a "little touch" on her right side, even though Midnight was walking on her left side. (8/27/12 Tr. 258-59, 267, Eisenstadt.) She then realized that her card case was missing from her skirt pocket. When she could not locate the card case on the stairs, she exited the subway and ran into a neighbor, who flagged down a police car at her request. (*Id.* at 259, 268-271.) Eisenstadt told the police that her card case had been stolen, and accompanied a police officer back to Rite Aid to make sure she had not dropped it there. (*Id.* at 259, 260, 272.)

When Petitioner reunited with Richardson and Kenny, he produced a wallet that contained different credit cards. Petitioner gave one credit card to Richardson and one to Kenny. (8/27/12 Tr. 331-33, 329-330, Richardson.) Richardson went to a Walgreens store and bought two Boost Mobile cards and two T-Mobile cards with the credit card Petitioner had given her. (*Id.* at 332-335, 351, 352, 366.) Richardson gave Petitioner the T-Mobile cards, used one of the Boost Mobile cards for her own phone, and sold the other one. (*Id.* at 344.)

New York City Police Department ("NYPD") Detective David Sanchez was assigned to investigate the theft of Eisenstadt's property. (8/27/12 Tr. 385-86, 419-21, Sanchez.) He obtained surveillance video from the Rite Aid, an Optimum Grocery Store on 75th Avenue and Queens Boulevard, and a Walgreens store on Queens Boulevard. (*Id.* at 388.) Petitioner was visible in all three videos. In the Optimum surveillance video, Petitioner was seen attempting, without success,

to pick the pocket of a man wearing a pink shirt.[2] (*Id.* at 393-94, 398-99.) Sales records from the Walgreens confirmed that Eisenstadt's credit cards were used that evening, even though Eisenstadt did not patronize the Walgreens. (8/27/12 Tr. 381-83, Coribello.) Detective Sanchez arrested Petitioner on April 24, 2012. (8/27/12 Tr. 400, Sanchez.)

Petitioner waived his *Miranda* rights and told Detective Sanchez that Kenny had gone into the subway and come out with a wallet, claiming that the woman had dropped it. (*Id.* at 407.) Petitioner claimed that Kenny handed the wallet to Petitioner, who tried to find the owner. (*Id.*) When Petitioner could not locate her, Kenny looked through the wallet, took the credit cards, and disappeared. Petitioner saw Kenny and Richardson in a store afterward with bags of cigarettes and razors; he said he did not see them again after that. Petitioner stated further that he did not know that the woman was blind and did not intend to follow or harm her. (*Id.* at 408.) Petitioner dictated his statement to Sanchez, who transcribed it; Petitioner signed the completed statement. (*Id.* at 400-01, 415-416.)

## II. Trial

On January 3, 2013, Petitioner proceeded to a jury trial in Queens County Supreme Court on multiple charges relating to the April 16, 2012 theft of Eisenstadt's property. Near the conclusion of trial, the presiding judge, Justice Robert C. Kohm, conducted a charge conference at which the attorneys, but not Petitioner, were present. The entire conference was transcribed. (8/27/12 Tr. 434-43.) During that conference, Justice Kohm advised the attorneys that Juror Number 2 had mentioned to one of the court officers that he might have recognized himself in one of the surveillance videos in evidence. (*Id.* at 439.) The judge brought the juror into chambers and asked him to identify himself in the video. The juror stated that it was "possible" that he was

---

[2] This act formed the basis of the jostling offense with which Petitioner was later charged.

3

captured in a video showing the front entrance of the Walgreens store. (*Id.* at 440.) The juror had visited that particular Walgreens in the past, although he thought that he was in Florida when these events took place. (*Id.*) Justice Kohm asked the juror whether his presence at the Walgreens would "in any way prevent [him] from being fair and impartial in this case." (*Id.*) The juror answered, "No," and explained that he remembered nothing about that day and did not recall "seeing anybody." (*Id.* at 440-41.) The judge repeated, "You wouldn't let that interfere with your being fair and impartial?", to which the juror again responded, "No." (*Id.* at 441.)

Petitioner's trial counsel then questioned the juror. The juror answered all of defense counsel's questions and stated that he had not discussed this matter with any of his fellow jurors. (*Id.* at 441-42.) Petitioner's counsel expressed reservations about the juror, stating that this was "not good" for Petitioner and this would "sort of color" things. (*Id.*) But Petitioner's counsel also acknowledged that the juror's answers were "fairly satisfactory" and that he thought the juror "could be fair." (*Id.* at 442.) Justice Kohm stated that the juror was still fit for service but offered to excuse the juror if both sides consented. Defense counsel responded, "I guess there is not a legal basis to remove him. [The juror] did say that he didn't think he would be the victim of crime." (*Id.* at 443.)

On January 17, 2013, the jury found Petitioner guilty of three counts of fourth-degree grand larceny, two counts of fourth-degree possession of stolen property, four counts of petit larceny, one count of third-degree identity theft, and one count of jostling. (*Id.* at 530-33.)

## III. Sentencing

Petitioner's sentencing hearing began on March 11, 2013. The court heard from Petitioner's counsel and the prosecution to determine if Petitioner should be sentenced as a persistent felony offender under New York Penal Law § 70.10. The court explained that the

government had the burden to prove Petitioner's status as a persistent felony offender beyond a reasonable doubt and could introduce evidence of Petitioner's background and crimes to do so. (Sentencing Tr., Dkt. 13-6, at 6-7.) The government and defense counsel disagreed over the number of times Petitioner had been arrested and convicted. The hearing was continued until May 9, 2013.

At the May 9, 2013 hearing, Petitioner's counsel urged the court to impose a sentence more lenient than 15 years to life, on the grounds that Petitioner was illiterate and had not completed school, suffered from drug addiction, and had been mistakenly shot in the back by a police officer. (*Id.* at 3.) The prosecutor asked the court to adjudicate Petitioner a persistent felony offender and impose a lengthy sentence, on the grounds that Petitioner was a career criminal, had repeatedly placed innocent people in harm's way, and had victimized the weak and vulnerable, including the victim in the case (Eisenstadt), who was blind and elderly. (*Id.* at 3-4.)

Based on the evidence, the court found that Petitioner had been arrested 28 times, which resulted in 19 felony convictions, all of which were relevant to whether Petitioner was a persistent felony offender. The court also found that Petitioner had been arrested for three violent felonies, including one involving firearms, and that the past charges against him included armed robbery, weapons possession, grand larceny, the sale and possession of illegal drugs, and driving while impaired. (*Id.* at 5-8.) The court then sentenced Petitioner as a persistent felony offender pursuant to N.Y. Penal Law § 70.10 to the following terms, to be served concurrently: (1) an indeterminate prison term of 15 years to life for each of the grand larceny and criminal possession of stolen property convictions; and (2) a one-year jail term for each conviction for petit larceny, identity theft, and jostling. (*Id.* at 11-12.)

## IV. Direct Appeal

On September 4, 2014, Petitioner appealed his conviction and sentence to the Appellate Division, Second Department. In his counseled brief, he raised the following claims: (1) he was denied his state and federal constitutional rights to be present during the questioning of a juror who thought he recognized himself in one of the prosecution's surveillance videos; and (2) the sentencing court abused its discretion in adjudicating him as a persistent felony offender and in imposing a sentence of 15 years to life. (Dkt. 13-7, at 1-29.) On March 18, 2015, the Appellate Division affirmed Petitioner's judgment of conviction. *People v. Peoples*, 126 A.D.3d 919 (N.Y. App. Div. 2015).

The Court of Appeals denied Petitioner leave to appeal the denial on July 22, 2015. *People v. Peoples*, 25 N.Y.3d 1205 (N.Y. 2015).

## V. Writ of Error Coram Nobis

On November 10, 2016, while the instant *habeas* matter was stayed, Petitioner filed a *pro se coram nobis* motion in the Appellate Division. (Dkt 13-7, at 87-95.) He argued that his appellate counsel was ineffective for not raising four arguments on appeal: (1) the juror who thought he recognized himself in the surveillance videos was an unsworn witness to Petitioner's alleged attempt to pick the pocket of a man wearing a pink shirt; (2) the prosecution failed to prove that Petitioner stole Eisenstadt's wallet; (3) uncharged crime evidence deprived Petitioner of a fair trial; and (4) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the fact that a detective had lost her paperwork for the interview she had conducted of the jostling victim (*Id.* at 92.) On June 14, 2017, the Appellate Division denied the motion, finding that Petitioner had failed to establish that he was deprived of the effective assistance of appellate counsel. *People v. Peoples*, 151 A.D.3d 889 (N.Y. App. Div. 2017).

## VI. Instant Petition for Writ of *Habeas Corpus*

Petitioner timely filed the instant *habeas* petition on December 6, 2015. (Dkt. 1.) The Court stayed the proceedings on April 1, 2016 so Petitioner could file his petition for a writ of *error coram nobis*. (4/1/16 docket entry.) The stay was lifted on May 15, 2017. (5/15/17 docket entry.) Respondent filed its opposition on July 11, 2017. (Dkt. 13.)

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular

7

prisoner's case." *Id.* (citation omitted). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). Thus, "a habeas court must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

**DISCUSSION**

Petitioner challenges his conviction on the grounds that: (1) the court denied his right to be present during a material stage of the trial, namely, a conference with a juror; (2) the court abused its discretion in sentencing Petitioner as a persistent felony offender; and (3) he was denied effective assistance of appellate counsel. The Court reviews each of these claims in turn.

**I.      Right to Presence at Court Proceeding Claim**

Petitioner argues that he had a right to be present at the time the trial judge questioned Juror Number Two. Petitioner asserts that had he been present at the interview, he "could have told his attorney whether he remembered seeing [Juror Number Two] inside the store." (Dkt. 13-7, at 19-20.) Petitioner further argues that he "was in a better position than his attorney" to evaluate Juror

Number Two's credibility and to "scrutinize [the juror's] claims" that he remembered nothing from that day and did not recall seeing anyone at the store. (*Id.*) This argument is without merit.

The Due Process clause of the Fourteenth Amendment guarantees a criminal defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, the right to be present is not absolute and the privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow." *Id.* at 745. Moreover, while a more expansive right to be present may apply under New York law, that broader right is not applicable in a federal *habeas* proceeding, where it does not implicate the rights of the defendant under the United States Constitution. *See Rios v. Artuz*, 07-CV-330 (NGG), 2007 WL 1958899, at *9 n.4 (E.D.N.Y. June 29, 2007).

Here, the trial judge informed Petitioner's counsel that Juror Number Two may have recognized himself in one of the surveillance videos. The judge, the attorneys for both sides, and the court reporter then met privately with the juror. Petitioner's counsel consented to this arrangement, was permitted to question the juror, and did not seek to have the juror excused thereafter. Petitioner's counsel acknowledged that the juror's answers were "fairly satisfactory" and that he thought the juror "could be fair." (8/27/12 Tr. 442.) Under these circumstances, the Court does not find that Petitioner's constitutional right to be present during his criminal proceedings was violated. The Court rejects Petitioner's argument that he would have been able to add something useful to the meeting, such as his evaluation of the juror's "credibility." *See United States v. Gagnon*, 470 U.S. 522, 527 (1985) (holding that a defendant did not have the right to attend a meeting with a juror and defense counsel because defendant "could have done nothing had [he] been at the conference, nor would [he] have gained anything by attending"); *Pellington*

9

*v. Greiner*, 307 F. Supp. 2d 601, 607 (S.D.N.Y. 2004) (judge's discussion with juror in presence of counsel and court reporter regarding conduct of another juror did not violate *habeas* petitioner's constitutional right to be present); *see also Gillespie v. Miller*, No. 04-CV-0295 (LAP)(AJP), 2004 WL 1689735, at *17 (S.D.N.Y. July 29, 2004) (holding that *habeas* petitioner who was present throughout the trial and "was only absent when his attorney made an additional objection to the jury instructions to place it on the record for later appeal" was not absent during a "material" stage of his trial) (citations omitted).[3]

The Appellate Division ruled that Petitioner's attendance at the meeting "could not have had a substantial effect on his ability to defend the charges" and that Petitioner "could not have made a valuable contribution." *Peoples*, 120 A.D.3d at 920. The Court finds that this ruling and the Appellate Division's denial of Petitioner's right-to-attend claim were reasonable applications of clearly established federal law. *See Kentucky*, 482 U.S. at 745 (due process clause guarantees defendant "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). Accordingly, Petitioner's claim that his absence from the interview of Juror Number Two violated his right to due process does not entitle him to *habeas* relief.

## II.  Sentencing Claim

Petitioner argues that the trial court abused its discretion in sentencing Petitioner as a persistent felony offender. When Petitioner appealed his sentence in the state courts, he urged the

---

[3] Even if Petitioner had recognized the juror, that fact would have been irrelevant, since it was the juror's recollection of seeing Petitioner, or lack thereof, that mattered. Furthermore, if, in fact, Petitioner recalled seeing Juror Number Two in the store on the day in question, Petitioner could have told his attorney at any time during the trial—though he apparently did not—and thus Petitioner's absence from the conference with the juror did not prejudice Petitioner or undermine his right to be present during a material stage of the trial.

Appellate Division to exercise its discretionary authority to review factual questions and reduce the length of his sentence in the interests of justice.

In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A *habeas* petitioner's challenge to the length of his prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range under state law. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). Petitioner, having been adjudicated as a persistent felony offender[4], was required to be sentenced to an indeterminate life term, with the minimum sentence ranging from fifteen years to life in prison. *See* N.Y. Penal Law § 70.00(3)(a)(i). Since Petitioner received the sentence prescribed by statute, his claim that his sentence was harsh and excessive does not present a federal constitutional issue amenable to *habeas* review.

### III.  Ineffectiveness of Appellate Counsel

Petitioner filed a *coram nobis* motion alleging that his appellate counsel was ineffective for not raising four claims that Petitioner deemed meritorious: (1) the juror who thought he recognized himself in the surveillance videos was an unsworn witness to Petitioner's alleged attempt to pick the pocket of a man wearing a pink shirt; (2) the prosecution failed to prove that Petitioner stole Eisenstadt's wallet; (3) uncharged crime evidence deprived Petitioner of a fair trial;

---

[4] Petitioner does not dispute the fact of his 19 felony convictions, including three violent felony convictions, upon which his persistent offender status is based. Nor can he, since his criminal record clearly establishes these facts.

and (4) the prosecution committed a *Brady* violation by not disclosing the fact that a detective had lost her paperwork for the interview she had conducted of the jostling victim. (Dkt. 13-7, at 92.) The Appellate Division denied the application, stating simply that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." *Peoples*, 151 A.D.3d at 889. Even though Petitioner may not have completely exhausted his claim by seeking leave to appeal the denial to the New York Court of Appeals, the Court will address the merits of Petitioner's ineffective assistance claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Under *Strickland v. Washington*, in order to demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner must show that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "[A] petitioner may establish constitutionally inadequate performance of appellate counsel if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)); *Guiney*, 806 F.3d at 123 (explaining that "appellate counsel need not raise every colorable claim on behalf of a client [to be effective]").

Petitioner's claims fail both prongs of *Strickland*. First, there is no indication that the representation provided by Petitioner's appellate counsel "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Petitioner's appellate counsel, Dina Zloczower, filed a 25-page brief on Petitioner's behalf, raising two arguments: (1) whether Petitioner was deprived of the right to be present when the court questioned Juror Number Two; and (2) whether the sentencing court abused its discretion in finding him to be a persistent felony offender. (Dkt. 13-7, at 1-29.) The Court finds that the arguments made by attorney Zloczower on appeal were sound and well-supported. Even though the Appellate Division ultimately rejected her argument, that decision was no reflection on the quality of Zloczower's representation. The Appellate Division considered and discussed the merits of both claims in its decision. *Peoples,* 126 A.D.3d at 920-21. Following the Appellate Division's denial, Zloczower supplemented her brief with a 7-page letter supporting Petitioner's leave application to the Court of Appeals, asking that court to re-examine the sentencing, as well as the issue of whether the persistent offender regime was contrary to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Dkt. 13-7, at 76-77.) There is no indication that Zloczower omitted "significant and obvious issues" from her appellate brief or provided anything less than competent counsel to Petitioner. *Lynch*, 789 F.3d at 311. Though Petitioner suggests that Zloczower should have made additional arguments—i.e., the ones Petitioner raised *pro se* in his *coram nobis* petition—the Appellate Division's rejection of those arguments amply disproves Petitioner's suggestion. *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Second, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Guiney*, 806 F.3d at 117. Petitioner raises four claims, none of which would have succeeded on appeal. Petitioner's first claim, that the juror who thought he recognized himself in a surveillance video was an unsworn witness to Petitioner's alleged attempt to pick the pocket of a man wearing a pink shirt, confuses two videos—one taken outside of Walgreens and one taken outside of the Optimum store. The video where one of the jurors thought he recognized himself was from Walgreens. The video where Petitioner jostled the man in the pink shirt, in an attempt to pick the man's pocket, was taken outside of the Optimum store. Petitioner's appellate counsel noted this distinction in her appellate brief. (Dkt. 13-7, at 124-125.)

Petitioner's second claim, i.e., that the evidence was insufficient to prove that he stole Eisenstadt's wallet, was unpreserved for appellate review. *See People v. Gray*, 86 N.Y.2d 10, 18-19 (1995) (holding that the issue of evidentiary sufficiency must be preserved for appellate review).[5] But even if Petitioner had preserved this claim, Petitioner fails to meet the "very heavy burden" he bears in challenging the legal sufficiency of his state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). Rather,

---

[5] Under New York's "contemporaneous objection" rule, a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." *Gray*, 86 N.Y.2d at 19–20. "A general objection is not sufficient, because, as New York's highest courts uniformly instruct, to preserve a claim, a defendant must specifically focus on the alleged error." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citation and internal quotation marks omitted). Here, there is no indication that Petitioner's counsel made such a specific objection to preserve this claim for appeal.

a state court decision rejecting a sufficiency challenge may be overturned on federal habeas review only upon finding that the "decision was objectively unreasonable." *Id.* (quotation marks and citation omitted).

Here, Petitioner was convicted of multiple crimes relating to the theft of Eisenstadt's wallet, the most serious of which was grand larceny in the fourth degree. "[A] person is guilty of grand larceny in the fourth degree when he steals property and when . . . the property consists of a credit card or debit card." N.Y. Penal Law § 155.30. The government satisfied these elements with its presentation of evidence at trial, which included the surveillance videos and numerous witnesses, such as Latisha Richardson, who testified, *inter alia*, that Petitioner set out that day to pick-pocket people, that Petitioner entered the subway at the same time as Eisenstadt, that Petitioner emerged from the subway shortly thereafter with a wallet, that Petitioner distributed credit cards belonging to Eisenstadt to Richardson and Kenny, and that unauthorized purchases were made with those credit cards. The Court finds that this evidence was sufficient to support the jury's verdict finding Petitioner guilty of all counts of conviction, and any argument to the contrary on appeal would have been unsuccessful.[6]

---

[6] Petitioner was also convicted under N.Y. Penal Law § 165.45 ("A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when . . . the property consists of a credit card, debit card or public benefit card"), N.Y. Penal Law § 155.25 ("A person is guilty of petit larceny when he steals property"), N.Y. Penal Law § 190.78 ("A person is guilty of identity theft in the third degree when he or she knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby: 1. obtains goods, money, property or services or uses credit in the name of such other person or causes financial loss to such person or to another person or persons; or 2. commits a class A misdemeanor or higher level crime"), and N.Y. Penal Law § 165.25 ("A person is guilty of jostling when, in a public place, he intentionally and unnecessarily: 1. places his hand in the proximity of a person's pocket or handbag; or 2. jostles or crowds another person at a time when a third person's hand is in the proximity of such person's pocket or handbag").

Petitioner's third claim, i.e., that uncharged evidence relating to Petitioner's attempted pickpocketing of the man in the pink shirt deprived Petitioner of a fair trial, also fails. Petitioner's claim is erroneous because he was charged with the crime of jostling the man in the pink shirt; the evidence that he alleges was "uncharged" was used to convict him on that count. His counsel therefore could not have successfully argued that this "uncharged crime" evidence deprived him of a fair trial.

Petitioner's fourth argument is that the government violated *Brady* by not disclosing the fact that a detective lost her paperwork documenting the interview she conducted with the jostling victim. (Dkt. 13-7, at 92.). The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. *See Brady*, 373 U.S. at 83. To establish a *Brady* violation, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280. Non-disclosure merits relief only if the government's failure "undermines confidence in the outcome of the trial." *Kyles v. Whitly*, 514 U.S. 419, 434 (1995) (quotation marks and citation omitted).

Here, Petitioner's argument fails because there is no evidence that the lost material—the detective's interview notes, which included the jostling victim's name and address—was exculpatory in any way. In fact, Petitioner's appellate counsel acknowledged the same in her brief. (Dkt 13-7, at 125.) Nor is there any evidence that the prosecution failed to disclose the loss of the notes or the victim's contact information. Indeed, at trial, the court instructed the jurors that the

government's failure to call the jostling victim as a witness "permits, but does not require, an inference that had he been called, this testimony would not have supported the People's position on [the jostling] issue." (Tr. 484.) This instruction indicates that the defense knew prior to trial about the lost contact information for the jostling victim and had raised the issue with the trial judge. Furthermore, the instruction given by the judge cured any potential prejudice to Petitioner from not having the victim's contact information. Petitioner offers no evidence to show that he suffered any prejudice from the government's loss of the paperwork. Thus, Petitioner's *Brady* argument would have been unsuccessful on appeal and his attorney was not ineffective for not raising it. *Jones*, 463 U.S. at 754 ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy."). Rather, the record demonstrates that the legal services provided by Petitioner's appellate counsel were well within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 694.

## IV. AEDPA Deference

Because the Court has rejected all of Petitioner's claims *de novo*, it further finds that the state court's rejection of some of the same claims was not an "unreasonable application of[] clearly established Federal law," or an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Peoples is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Attys. Gen.,* 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability

where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citation omitted). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

                              SO ORDERED.


                              */s/ Pamela K. Chen*
                              Pamela K. Chen
                              United States District Judge

Dated: November 29, 2018
       Brooklyn, New York